PETER R. BOUTIN, CASB No. 65261
peter.boutin@kyl.com
GORDON C. YOUNG, CASB No. 158100
gordon.young@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
Four Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: (415) 398-6000
Facsimile: (415) 981-0136

Attorneys for Plaintiff
PERSHING LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSHING LLC, <br><br> Plaintiff, <br><br> vs. <br><br> CROCKER SECURITIES LLC and DOUGLAS GREEN, <br><br> Defendants. | Case No. cv-08-3141 WHA <br><br> DECLARATION OF SAMANTHA E. KEFFORD IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER |

I, Samantha E. Kefford, being first duly sworn upon oath, depose and state as follows:

1. I am employed by Pershing LLC ("Pershing") as a Vice President in the firm's Compliance Department. I make this declaration in support of Pershing's application for a temporary restraining order against Crocker Securities LLC ("Crocker Securities") and Douglas Green (collectively "Defendants"). I make this declaration based on my personal knowledge, upon Pershing's business records and other records shown to me, and, where specified, upon information and belief.

2. By way of background, Pershing is one of the largest securities clearing firms in the United States. Pershing executes, clears, settles and custodies securities on

- 1 -
DECLARATION OF SAMANTHA E. KEFFORD IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER

behalf of over 1100 introducing intermediaries. In the parlance of securities clearing, broker dealers that use the services of clearing firms are called "introducing firms" or "introducing intermediaries."

3. Crocker Securities is an introducing firm to and customer of Pershing. Crocker Securities has been a clearing customer of Pershing since in or about August 2003.

4. In my capacity as a Vice President for Pershing's Compliance Department, I act as a liaison between Pershing and federal and state regulators and self regulatory organizations including The Financial Industry Regulatory Authority ("FINRA"). I am responsible for, among other things, the management of all regulatory examinations and inquiries. I hold various securities licenses, including Series 7, 4, 9, 10 and 63 licenses. I have previously been employed by Quick & Reilly (n/k/a Banc of America Investment Services). I am member of the Legal and Compliance Committee of the Securities Industry Financial Markets Association.

5. In or about May, 2008, Pershing was advised by FINRA that it was conducting a routine examination of Crocker Securities. As a part of FINRA's examination, FINRA requested that Pershing provide trading information in the form of a document commonly referred to as a "trade blotter" concerning transactions in five mortgage-backed securities executed by Crocker between October 1, 2007 and March 31, 2008.

6. Following receipt of this information request, Pershing's Compliance Department began collecting documentation and preparing a response to FINRA's request for information.

7. On or about June 3, 2008 and June 9, 2008, Pershing provided FINRA with documentation and information consisting of trade blotters for the relevant securities during the time period requested. Pershing also provided FINRA with "contra party"

- 2 -
DECLARATION OF SAMANTHA E. KEFFORD IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER

1  information (i.e. the identity of the entity or individual on the opposite side of the trade)
2  for these transactions.
3      8.   Attached hereto as Exhibit 1 is a true and correct copy of FINRA's June 19,
4  2008 document request directed to Pershing. This document request was received by
5  Pershing in connection with FINRA's investigation of Crocker Securities and
6  supplemented an earlier request Pershing received from FINRA in May 2008. By this
7  request, FINRA advised that it had discovered a "discrepancy in the trade dates
8  recorded by [Crocker]" and that it sought information and documentation concerning the
9  trading of mortgage-backed securities in an account maintained by Crocker Securities at
10 Pershing bearing the account number 7Z7-891035.
11     9.   While providing a response to this request, Pershing also conducted an
12 internal review of Crocker Securities' execution of mortgage-backed securities. Based
13 upon Pershing's review of the relevant trading data it was determined that Crocker
14 Securities had multiple open transactions, all by Defendant Douglas Green, but the
15 trades had not settled.
16     10.  I have been advised that Pershing contacted the contra parties to these
17 non-settled transactions and that the contra parties disavowed any knowledge of the
18 transactions and advised that they will not settle (or finalize) the trades with Crocker
19 Securities and Pershing. As a result, Pershing has cancelled the non-settled
20 transactions.
21     I declare under penalty of perjury under the laws of the United States and the
22 States of California and New Jersey that the foregoing is true and correct.
23     Executed on July 1, 2008 at Jersey City, New Jersey.

Samantha E. Kefford

- 3 -
DECLARATION OF SAMANTHA E. KEFFORD IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER



34 Pages

Via Facsimile (201) 413-5284 and Certified Mail

June 19, 2008

Ms. Claire Santaniello
Chief Compliance Officer
Pershing LLC
One Pershing Plaza
Jersey City, NJ 07399

Re:   FINRA Examination # 20080124442

Dear Ms. Santaniello:

In connection with FINRA's investigation relating to the trading activities of Crocker Securities LLC ("Crocker"), FINRA requests that Pershing LLC ("Pershing"), which clears all of Crocker's business, provide certain information and documentation.

This request for information focuses on the trading of Collateralized Mortgage Obligations ("CMO") between a proprietary trading account of Crocker, account 7Z7-891035, and five contra broker-dealers. A review of trading information gathered from Crocker, Pershing and select contra side broker-dealers to these CMO trades indicates that there is a discrepancy in the trade dates recorded by the parties to these trades. FINRA is requesting that Pershing provide information regarding a small sampling of these trades so we can better understand these trading activities and how the trades are entered, cleared, and supervised by Pershing.

Listed below are trade sequences on which Crocker proprietary account 7Z7-891305 is on one side of the trade and another broker-dealer on the contra-side. FINRA understands that three of the contra broker-dealers listed in the trades below, Stone & Youngberg LLC, Saxony Securities Inc., and Tullett Liberty Securities, also clear through Pershing.

A. Order Leg 1   Trade date August 14, 2007 for settlement September 13, 2007 Crocker buys from Stone & Youngberg $7,000,000 CUSIP 01F052698 @98.8125

Order Leg 2   Trade date September 11, 2007 for settlement September 13, 2007 Stone & Youngberg sells to Crocker $7,000,000 CUSIP 01F052698 @98.8125

Investor protection. Market integrity.

One Montgomery Street    t 415 217 1100
Suite 2100               f 415 956 1931
San Francisco, CA        www.finra.org
94104



EXH. 1

*[handwritten: David Mak / Chris Brady / Debbie Bradeet]*

Ms. Claire Santaniello
June 19, 2008
Page 2 of 5

B.  Order Leg 1   Trade date <u>August 29, 2006</u> for settlement <u>September 29, 2006</u> Crocker sells to Tullett Liberty $3,236,000 CUSIP 31394VJD3 @99

   Order Leg 2   Trade date <u>September 26, 2006</u> for settlement <u>September 29, 2006</u> Tullett Liberty buys from Crocker $3,236,000 CUSIP 31394VJD3 @99

C.  Order Leg 1   Trade date <u>September 26, 2007</u> for settlement <u>October 31, 2007</u> Crocker sell to Saxony $10,000,000 CUSIP 31393YU37 @119.7188

   Order Leg 2   Trade date <u>October 29, 2007</u> for settlement <u>October 31, 2007</u> Saxony buys from Crocker $10,000,000 CUSIP 31393YU37 @119.71875

D.  Order Leg 1   Trade date <u>August 14, 2007</u> for settlement <u>September 13, 2007</u> Crocker buys from Salomon $27,000,000 CUSIP 01F052698 @98.78125

   Order Leg 2   Trade date <u>September 11, 2007</u> for settlement <u>September 13, 2007</u> Salomon sells to Crocker $27,000,000 CUSIP 01F052698 @98.78125

E.  Order Leg 1   Trade date <u>February 27, 2008</u> for settlement <u>March 31, 2008</u> Crocker sells to National Alliance $10,000,000 CUSIP 31394UT77 @125.2187

   Order Leg 2   Trade date <u>March 28, 2008</u> for settlement <u>March 31, 2008</u> National Alliance buys from Crocker $10,000,000 CUSIP 31394UT77 @125.2188

In connection with each of the five trade sequences listed in A-E above, please respond to the following questions and provide requested documentation. In your response, please organize the responses in numerical order within each trade sequences so the responses to each question can be specifically identified to each trade sequences in A-E above. If any of the responses are identical for the same question within two or more trade sequences, please clearly state this in the response.

1. Please explain Pershing's systems for CMO order entry, order handling and order execution (Order Systems) and how the Order Systems facilitated and permitted the entry of these orders with different trade dates for settlement on the same day. In your response, please explain whether it is permissible for any correspondent firm that clears through Pershing to enter orders in CMO's traded in the secondary market to designate a settlement date that can be

Ms. Claire Santaniello
June 19, 2008
Page 3 of 5

approximately 30 days or more subsequent to trade date and for which the trade dates vary with the trade date designated on the order for the contra-side broker-dealer's order.

Please explain why and how Pershing permitted the orders with varying trade dates to be entered in the manner in which Crocker and the contra-side entered them.

If both sides of the transaction are Pershing correspondents, are the parties treated differently with respect to this order entry/settlement process, please explain. In your response, please answer the question as it relates to the Order Systems in place when the orders in question were handled.

2. FINRA understands that with respect to the trade sequences in A-E above, that Crocker may have initially entered the first leg of the order, then subsequently cancelled/rebilled the order, generally keeping the same terms, conditions, settlement date, etc... For each order related to the trade sequences in A-E above, please provide all order memoranda documenting all changes made by Crocker to each order identified in the "Order Leg 1" portion of the trade sequence. This would include order memoranda changing any part or an order, an outright cancel and creation of a new order, etc... Please state if any portion of the order memoranda details for each Order Leg 1 were not changed.

3. Subsequent to entering the first leg of the order into the Order System, was Crocker or the contra-side to the order provided with any type of alert or compliance report prior to settlement date that the trades were still open?[1] In your response, please indicate whether the open order appeared on any compliance or exception report capturing open orders, uncompared orders/trades, etc... If the order did appear on any such compliance or exception reports, please provide the following information and documentation for each such report:

   a. A sample copy of the report for one day the first leg of the order appeared prior to the second leg being entered and settled.
   b. Provide a description of the report parameters explaining when and how orders and trades are populated into the report.
   c. Please state how often the report is generated and the frequency with which it was transmitted to Crocker and the contra side broker-dealer.
   d. Please state how the report is transmitted to Crocker and the contra-side broker-dealer to the trade (e.g., email, fax, regular mail, etc...).
   e. Please provide the name of the persons at Crocker and the contra-side to the order who were provided the exception/compliance report(s) by Pershing.

---
[1] This would not include standard monthly account statements listing trades pending settlement.

Ms. Claire Santaniello
June 19, 2008
Page 4 of 5

    f. Provide the Pershing policies and procedures covering the generation, review and distribution of these reports that were in place during the period of time the orders were entered and settled. In your response, please provide a summary of the steps Pershing would take to address orders that remained open past the internal guidelines set by Pershing.

4. If Pershing did not generate any type of alert or report prior to settlement date that the trades were open, did Pershing otherwise notify either Crocker or the contra-side of the existence of the open order? If yes, please explain and state who at Crocker and the contra-side were notified, who at Pershing made the notification, a summary of the notification and what steps were taken by Crocker, the contra-side or Pershing to address the open order, if any.

5. Subsequent to entering the first leg of the order into the Order System by Crocker, did Pershing generate any internal alert or report prior to settlement date that the trades were open? In your response, please indicate whether the open order appeared on any internal compliance or exception report capturing open orders, uncompared orders/trades, etc... If the order did appear on any such compliance or exception report, please provide the following information and documentation for each such report:

    a. A copy of the report for one sample day it appeared until the order executed <u>and</u> settled.
    b. Provide a description of the report parameters explaining when and how orders and trades are populated into the report.
    c. Please state how often the report is generated and what department at Pershing is responsible for its review.
    d. Provide the Pershing policies and procedures covering the generation, review and distribution of these reports that were in place during the period of time of the orders were entered and settled.

6. For order scenarios listed in C & D above, were these open orders handled in a different manner given that Pershing did not clear for these firms? Please explain.

7. Please provide any additional information that you feel would be helpful for FINRA to gain a better understanding of how order sequences as those identified in this letter were and are handled by Pershing.

Please note we have had a previous discussion regarding these matters with John Tiernay and John LoMonaco via a conference call on May 12, 2008.

This request is being made pursuant to NASD Procedural Rule 8210 which requires a member firm and persons associated (or formerly associated) with a member firm to provide information with respect to any matter involved in an investigation, complaint or proceeding. Please provide your response no later than June 26, 2008.

Ms. Claire Santaniello
June 19, 2008
Page 5 of 5

If you have any questions, please call the undersigned at (415) 217-1148 or David Lee, Examination Manager, at (415) 217-1138.

Sincerely,

*Dan Pizza*

Dan Pizza
Associate Principal Examiner

DP:ct



# FACSIMILE

| TO | Claire Santaniello | FROM | Dan Pizza |
|---|---|---|---|
| COMPANY | Pershing LLC | FAX | 415-956-1931 |
| FAX | 201-413-5264 | TEL | 415-217-1148 |
| TEL | | | |
| DATE | June 19, 2008 | | |
| NUMBER OF PAGES INCLUDING COVER | 6 | | |

This fax transmittal is strictly confidential and is intended solely for the person or organization to whom it is addressed.

Investor protection. Market integrity.

One Montgomery Street    t 415 217 1100
Suite 2100                f. 415 956 1931
San Francisco, CA         www.finra.org
94104-5521