PETER R. BOUTIN, CASB No. 65261
peter.boutin@kyl.com
GORDON C. YOUNG, CASB No. 158100
gordon.young@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
Four Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone:   (415) 398-6000
Facsimile:    (415) 981-0136

Attorneys for Plaintiff
PERSHING LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PERSHING LLC,<br><br>               Plaintiff,<br><br>vs.<br><br>CROCKER SECURITIES LLC and<br>DOUGLAS GREEN,<br><br>               Defendants. | Case No. cv-08-3141 WHA<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR DISSOLUTION OF *EX PARTE* ORDER GRANTING TRO AND ORDER TO SHOW CAUSE, AND TO STAY THIS PROCEEDING AND COMPEL ARBITRATION** |

Plaintiff PERSHING LLC ("Pershing" or "Plaintiff") respectfully submits this memorandum in opposition to Defendant DOUGLAS GREEN'S ("Green" or "Defendant") Motion for Dissolution of Ex Parte Order Granting TRO and Order to Show Cause, and to Stay this Proceeding and to Compel Arbitration (the "Motion").

KYL_SF463818

1

## **TABLE OF CONTENTS**

2    I.    INTRODUCTION ................................................................. 1

3          A.    The Fraudulent Scheme ................................................ 1

4          B.    Pershing's Discovery Of Manipulation ......................... 2

           C.    Pershing Acted In Full Compliance With FINRA's Rules ........... 3

5          D.    Possible Modification Of TRO ....................................... 3

6    II.   PROCEDURAL AND FACTUAL SUMMARY ............................ 4

7    III.  LEGAL ANALYSIS AND ARGUMENT ................................... 5

8          A.    Pershing Has Satisfied The Preliminary Injunction Standard ......... 5

9          B.    Green Is A Proper Party To The Order .......................... 6

10         C.    The Availability Of An Adequate Remedy At Law Does Not Preclude
                 Equitable Relief ......................................................... 7

11               1.    Pershing's Request for Money Damages From Green
                       Does Not Defeat the Court's Equitable Powers ............... 7

12               2.    The Grupo Mexicano Decision is Distinguishable ............. 8

13         D.    A Bond Need Not Be Posted Under The Circumstances ........... 9

14         E.    Green's Petition To Compel Arbitration Should Be Denied As
                 FINRA's Rules Permit Pershing To Seek Equitable Relief Through
15               The Courts .............................................................. 10

16         F.    Expedited Discovery Is Appropriate Under The Circumstances ..... 11

17   IV.   CONCLUSION ............................................................... 12

18

19

20

21

22

23

24

25

26

27

28

i

KYL_SF463818

1

## TABLE OF AUTHORITIES

2

3                                    **Cases**

4   California Native Plant Society v. United States E.P.A.,
        2007 WL 2021796, at *13 (N.D. Cal. July 10, 2007).....................................................6

5   Deckert v. Independence Shares Corp.,
6       311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940) .........................................................8

7   Elliot v. Kiesewetter,
        98 F.3d 47, 60 ...............................................................................................................9

8   Federal Trade Commission v. H.N. Singer, Inc.,
9       668 F.2d 1107 (9th Cir. 1982) ........................................................................................8

    Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund, Inc.,
10      119 S. Ct. 1961 (1999) ...........................................................................................8, 9, i

11  In Re Focus Media Inc., et al. v. John P. Pringle, Chapter 7 Trustee,
        387 F. 3d 1077 (9th Cir. 2004) .......................................................................................9
12

13  Jorgensen v. Cassiday,
        320 F.3d 906 (9th Cir. 2003) ..........................................................................................9

14  Lakeview Technology Inc. v. Robinson,
        446 F. 3d 655 (7th Cir. 2006.) ........................................................................................8
15

16  Parke v. First Reliance Standard Life Ins. Company,
        368 F. 3d 999 (8th Cir. 2004) ........................................................................................7

17  Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.,
18      737 F. Supp. 1521 (S.D. Cal. 1990)................................................................................8

19  Roe v. Anderson,
        134 F.3d 1400 (9th Cir. 1998) ........................................................................................6

20  United States v. Oncology Assocs., P.C.,
        198 F. 3d 489 (4th Cir. 1999) .....................................................................................8, 9
21

22  Scherr v. Volpe,
        466 F. 2d 1027 (7th Cir. 1972) .......................................................................................9

23  Stuhlberg Int'l Sales Co. v. John D. Brush & Co.,
        240 F.3d 832 (9th Cir. 2001) ..........................................................................................6

24  United States ex rel. Rahman v. Oncology Assocs., P.C.,
        198 F.3d 489 (4th Cir. 1999) ..........................................................................................8
25

26                                 **Other Authorities**

27  Schwarzer, Tashima and Wagstaffe, Cal Practice Guide: Fed. Civ. Pro. Before Trial
        (TRG 2008) ¶13:192 at p. 13-92...................................................................................10

28                                   - ii -                              KYL_SF463818

1

**Rules**

2    Federal Rule of Civil Procedure 65 ................................................................................. 3, 6

3    FINRA Rules

4        13200(a) ........................................................................................................................ 10

        13804(a) ........................................................................................................................... 3

5        13804 (b)(1) ................................................................................................................... 11

6    SEC Rule 15c3-1 .................................................................................................................... 5

7    Securities Exchange Act Section 10(b) and Rule 10b-5 ...................................................... 7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KYL_SF463818

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISSOLVE TRO, STAY
PROCEEDINGS AND COMPEL ARBITRATION -- Case No. cv-08-3141 WHA

I.    **INTRODUCTION**

Conspicuously absent from the Motion is any statement from Green refuting the very serious allegations that have been made against him in these proceedings.  Rather than submit a Declaration under penalty of perjury refuting Pershing's allegations,[1] Green attempts only a half-hearted collateral attack, focusing on purported technical and procedural defects of the Court's July 1, 2008 Order (the "Order").  Green's silence in the face of these allegations is telling and lends support to Pershing's claim that he was an active and knowing participant (if not the architect) of a fraudulent scheme involving mortgage-backed securities through which he and others at Crocker Securities ("Crocker") were able to misappropriate at least $8.6 million from Pershing.

A.    **The Fraudulent Scheme**

As alleged in Pershing's Complaint as well as the papers submitted in support of its *Ex Parte* Application for Temporary Restraining Order and Expedited Discovery (the "Application") [Doc. Nos. 8 and 9], this action arises out of a carefully orchestrated fraudulent scheme in which defendants Green and Crocker systematically manipulated the price of securities trades reported to Pershing.  This complex and fraudulent trading scheme was designed to enrich both Green and Crocker at the expense of Pershing.  Green was an *active* participant in this scheme and is believed to have initiated all of the fraudulent trades that form the basis of this suit.  See Declaration of Theodore Bragg in Support of Application for Temporary Restraining Order ("Bragg Decl.") at ¶ 9 [Doc. No. 13].

Between approximately February 2005 and May 2008, Green caused a series of fraudulent and fictitious trades to be placed in different fixed income

---

[1] On July 7, 2008, Green submitted a Declaration limited to the issues of (1) his Registration with Crocker and (2) his understanding regarding arbitration. [Doc. No. 28]

KYL_SF463818

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISSOLVE TRO, STAY PROCEEDINGS AND COMPEL ARBITRATION -- Case No. cv-08-3141 WHA

1   instruments (primarily mortgage-backed securities) for the purpose of artificially

2   inflating the reported value of the securities and creating a false record of profitable

3   trades. Id. at ¶¶ 5-14  In fact, no legitimate arms-length trades had occurred.  Indeed,

4   the transaction "sale price" reported to Pershing by Green and Crocker was frequently

5   inflated over the true market value of the securities. Id. at ¶ 8  These false profits were

6   in turn used by Defendants as security for extensions of credit Id. at ¶¶ 8-10 (totaling

7   millions of dollars which were subsequently transferred out of Crocker's Pershing

8   account) provided by Pershing.  See, Declaration of Edward Banian in Support of

9   Application for Temporary Restraining Order ("Banian Decl.") at ¶ 7 [Doc. No. 12]

10      **B.      Pershing's Discovery of Manipulation**

11          On Friday, June 27, 2008, Pershing discovered that the parties on the other

12  side of the purported sale transactions reported by Green and Crocker were unaware of

13  the "sales" that had been reported by Defendants.  As a result, Pershing began the

14  process of "cancelling" these trades resulting in a debit balance of more than $8.6 million

15  that Crocker has indicated cannot be paid.  Further compounding the gravity of this

16  situation, on June 30, 2008, the Financial Industry Regulatory Authority ("FINRA")[2]

17  issued a cease and desist order against Crocker – all but assuring that Crocker will

18  cease to exist as a going concern.  See Declaration of Garrett R. Wynne in Opposition to

19  Motion to Dissolve Temporary Restraining Order and Order to Show Cause, Stay

20  Proceedings and Compel Arbitration ("Wynne Decl.") at ¶ 2.

21          Notwithstanding the foregoing, Green blithely suggests that Pershing's

22  losses can be redressed by the Court through a damage award.  This argument fails to

23  address the very reason Pershing sought relief from the Court in the first instance.

24  Namely that Green – *having actively participated in the misappropriation of millions of*

25  *dollars from Pershing* – may compound his wrongdoing by hiding the funds (or the

26  _____

27  [2] FINRA is the self-regulatory organization for securities firms.

28                                     - 2 -                           KYL_SF463818

1  remaining funds) that he and Crocker wrongfully obtained *long before* Pershing's

2  claims are ultimately adjudicated.

3       **C.     Pershing Acted in Full Compliance with FINRA's Rules**

4            As set forth in the Bragg Declaration, since December 14, 2005, Crocker

5  has transferred millions of dollars out of its Proprietary Trading Account, to a bank

6  account in Crocker's name at Bank of America.  Bragg Decl. at ¶ 7.  Without the benefit

7  of the expedited discovery the Court has allowed Pershing to conduct, Pershing will be

8  unable to determine precisely what portion of these funds went to Green.  Given the

9  gravity of the situation and the real and continuing harm Pershing faces, Pershing – as

10  it is entitled to as a member firm under FINRA's rules – sought and obtained temporary

11  injunctive relief from this Court.[3]  Pershing's actions in this regard were necessary,

12  appropriate and in full compliance with FINRA's rules.  Moreover, Pershing submitted

13  sufficient evidence to satisfy the standard for the issuance of an injunction pursuant to

14  Federal Rule of Civil Procedure 65 and the Court did not exceed its authority in issuing

15  the Order.

16       **D.     Possible Modification of TRO**

17            Pershing does not object to a reasonable modification of the Court's Order

18  to allow Green to make expenditures for reasonable living expenses.  On July 3, 2008,

19  during a telephone call with one of Green's attorneys, Pershing's attorneys asked that

20  Green provide a summary of his anticipated reasonable monthly living expenses and

21  proposed language for a stipulated modification of Paragraph 1(b) of the Order.  See

22  Wynne Decl. at ¶ 3.  Green's attorney advised that information on Green's financial

23  condition would be promptly provided.  Id.  To date, Green has not provided a list of

24  reasonable monthly living expenses,[4] nor has he provided any proposed alternative

25

26  ───────────────
    [3] FINRA Rule 13804(a) [See, Pershing's Request for Judicial Notice].

27  [4] The only monthly expense identified is a purported alimony/child support payment.

28                                    - 3 -                              KYL_SF463818

1    language for Paragraph 1(b) of the order.  Id.  Instead, Green filed the instant Motion

2    requesting that the Court completely dissolve the Order, which would leave Pershing

3    unprotected from the threat that Green may take steps to secrete and dissipate assets

4    which Pershing believes were obtained through fraudulent means.  Significantly, Green

5    does not submit any evidence, in the form of a declaration or otherwise, which would

6    provide a basis for this Court to determine that he is actually prejudiced by the existing

7    TRO.  Pershing remains willing to agree to a reasonable modification of the Order and –

8    to that end – will continue to negotiate in good faith with Green's counsel on a possible

9    modification of Paragraph 1(b) of the Order.

10

11   **II.     PROCEDURAL AND FACTUAL SUMMARY**

12           As set forth in the Application, in or about May 2008, Pershing was advised

13   by FINRA that it was conducting a routine examination of Crocker.  See Declaration of

14   Samantha E. Kefford in Support of Application for Temporary Restraining Order

15   ("Kefford Decl.") at ¶ 5 [Doc. No. 10].  As part of FINRA's examination, it sought and

16   obtained from Pershing trading information concerning mortgage-backed securities

17   traded by Crocker between October 1, 2007 and March 31, 2008.  Id.  Thereafter, on

18   June 19, 2008, FINRA sent a request for documents to Pershing in which FINRA noted

19   that it had discovered a "discrepancy in the trade dates recorded by [Crocker]" as it

20   related to trades in certain mortgage-backed securities.  Id. at ¶ 8.  While complying

21   with FINRA's request, Pershing conducted its own investigation which included a review

22   of the relevant documents, communications with Crocker principal Kevin Martin and

23   telephone calls to the "contra parties" to the suspect trades.  See Bragg Decl. at ¶ 9 and

24   Kefford Decl. at ¶ 10.  This investigation uncovered a complex scheme by which Crocker

25   – ***through trades placed by Green*** – manipulated the reported price of mortgage-

26   backed securities transactions, thereby wrongfully obtaining millions of dollars from

27

28                                              - 4 -                          KYL_SF463818

1  Pershing.  See Bragg Decl. at ¶¶ 8, 10.[5]

2        Confronted with these facts, on June 30, 2008, Pershing filed the instant

3  lawsuit against Green and Crocker in this Court.  On the same day, FINRA sent a cease

4  and desist letter to Crocker in which FINRA advised that Crocker was to "cease

5  conducting a securities business" because "the firm is below the net capital required by

6  the Net Capital Rule, SEC Rule 15c3-1."  See Wynne Decl. at ¶ 2 and Exh. 1.  The next

7  day, on July 1, 2008, Pershing filed its Ex Parte Application for Temporary Restraining

8  Order.  At or before the time of the TRO hearing, Pershing's counsel provided both

9  Crocker and Green with notice of its Application.  See July 1, 2008 Declaration of

10  Garrett R. Wynne at ¶¶ 2-6 and Exh. 1 [Doc. No. 5].

11

12  **III.  LEGAL ANALYSIS AND ARGUMENT**

13      **A.  Pershing Has Satisfied the Preliminary Injunction Standard**

14        In its Application, Pershing provided the Court with declarations from four

15  witnesses, each of whom explained how Defendants engaged in a fraudulent scheme

16  characterized by fictitious sales of mortgage-backed securities designed to mislead

17  Pershing into extending millions of dollars in credit to Crocker.  The testimony provided

18  in the declarations explained how Defendants systematically withdrew millions of

19  dollars from Crocker's proprietary trading account money that Pershing credited to

20  Crocker in connection with the fraudulent securities transactions.  The magnitude and

21  complexity of the fraud and the danger that – once confronted with the allegations –

22  Green and Crocker would take steps to further conceal their ill-gotten funds justify the

23  emergency relief granted by the Court.

24        The parties agree that, in determining TRO or preliminary injunction,

25  federal courts require the moving party to make a clear showing of either: (1) a

26  
27  [5] See also, Declaration of Edward Banian in Support of Application for Temporary Restraining Order ("Banian Decl.") at ¶ 4 [Doc. No. 12].

28                         - 5 -                 KYL_SF463818

1  combination of probable success on the merits and the possibility of irreparable injury,

2  or (2) that serious questions are raised and the balance of hardships tips sharply in favor

3  of the moving party.  These standards "are not separate tests but the outer reaches of a

4  single continuum." <u>Stuhlberg Int'l Sales Co. v. John D. Brush & Co.</u>, 240 F.3d 832, 839-

5  40 (9th Cir. 2001); <u>California Native Plant Society v. United States E.P.A.</u>, 2007 WL

6  2021796, at *13 (N.D. Cal. July 10, 2007).  *Accord* <u>Roe v. Anderson</u>, 134 F.3d 1400, 1402

7  (9th Cir. 1998) ("These two formulations represent two points on a sliding scale in which

8  the required degree of irreparable harm increases as the probability of success

9  decreases.").  Applying this standard, the Court properly found that Pershing had

10  demonstrated it was entitled to a temporary restraining order restraining Defendants

11  from dissipating their assets pursuant to Federal Rule of Civil Procedure 65.  Green has

12  failed to provide any reason for the Court to dissolve the TRO and – as demonstrated

13  below – all of his arguments fall flat.

14  **B.    Green is a Proper Party to the Order**

15  Green's argument that he is not a proper party to the Order should be

16  rejected outright.  In summary, Green claims only that "[b]ased on the allegations in the

17  Complaint," he should not be restrained by the Order.  Green's argument is incorrect

18  and misstates the allegations pled by Pershing.  Pershing's Complaint describes with

19  specificity Green's pivotal role in a fraudulent scheme which resulted in the

20  misappropriation of millions of dollars from Pershing.  Specifically, Green is alleged to

21  have:

- "[S]ystematically conspired to manipulate the price of securities traded through Pershing as part of scheme designed to enrich himself and Crocker Securities at the expense of Pershing." (Complaint at ¶ 7);
- "[K]nowingly and intentionally misrepresented to Pershing the profitability of certain trades made in a proprietary account domiciled at Pershing. . ." (Complaint at ¶ 18); and
- In connection with this fraudulent scheme, Defendants [including

- 6 -

KYL_SF463818

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISSOLVE TRO, STAY
PROCEEDINGS AND COMPEL ARBITRATION -- Case No. cv-08-3141 WHA

1  Green] obtained millions of dollars of credit extensions from

2  Pershing. (Complaint at ¶¶ 32, 52 and 55)

3  Contrary to Green's claim, the Complaint provides *specific* allegations of wrongdoing by

4  Green.[6]

5        These allegations are supported by sworn declarations that were submitted

6  in support of Pershing's request for emergency injunctive relief. When viewed in

7  conjunction with the sworn testimony provided by Samantha E. Kefford and Scott

8  Munroe, it is abundantly clear that Green is a proper party to the Order. Ms. Kefford's

9  declaration states that Green himself placed the fraudulent trades that form the basis of

10 this suit. <u>See</u>, Kefford Decl. at ¶ 9. Mr. Munroe's declaration states that Crocker

11 identified Green as the person responsible for the fraudulent trades. <u>See</u>, Munroe Decl.

12 at ¶ 4 [Doc. No. 11]. Finally, and most tellingly, Green fails to refute Pershing's

13 allegations that he: (1) personally executed all of the fraudulent trades at issue; (2) made

14 misrepresentations to Pershing regarding these trades; and (3) directly profited from

15 this fraudulent scheme. Based on the foregoing, there can be no doubt about Green's

16 central role in this fraudulent scheme and, in turn, the propriety of the Court's Order.

17    C.    **The Availability of an Adequate Remedy at Law Does Not Preclude Equitable Relief**

18

19         1.    **Pershing's Request for Money Damages From Green Does Not Defeat the Court's Equitable Powers**

20         As a preliminary matter, Pershing's claims against Green are not

21 exclusively legal in nature. In its Fourth Cause of Action, Pershing seeks the equitable

22 remedy of an accounting from Green. *See*, <u>Parke v. First Reliance Standard Life Ins.</u>

23 <u>Company</u>, 368 F. 3d 999, 1006 (8th Cir. 2004) ["[A]ccounting for profits is an appropriate

24

25 [6] In its Complaint, Pershing alleges causes of action against Green for Fraud (First Cause of Action),

26 Negligent Misrepresentation (Third Cause of Action), Accounting (Fourth Cause of Action), Violation of Securities Exchange Act Section 10(b) and Rule 10b-5 (Fifth Cause of Action), Money Had and Received

27 (Seventh Cause of Action) and Money Lent (Eighth Cause of Action).

28                                                      - 7 -                                    KYL_SF463818

1   *equitable* remedy." Emphasis added.]  Further, Pershing is entitled to injunctive relief

2   even though the majority of its claims against Green are ultimately compensable by

3   monetary damages.  "A judgment-proof defendant is not deterred by the threat of money

4   damages, so some other remedy (such as the contempt power) may be essential."

5   Lakeview Technology Inc. v. Robinson, 446 F. 3d 655, 657 (7th Cir. 2006.)  Although

6   Pershing is seeking both money damages and equitable relief, this "does not defeat the

7   district court's equitable powers."  United States ex rel. Rahman v. Oncology Assocs.,

8   P.C., 198 F.3d 489, 501 (4th Cir. 1999).  The great weight of authority holds that

9   preliminary relief is available on an equitable claim to preserve defendants' assets.

10  Deckert v. Independence Shares Corp., 311 U.S. 282, 290, 61 S.Ct. 229, 85 L.Ed. 189

11  (1940); Federal Trade Commission v. H.N. Singer, Inc., 668 F.2d 1107, 1112 (9th Cir.

12  1982); Reebok Int'l Ltd. v. Marnatech Enterprises, Inc., 737 F. Supp. 1521, 1525 (S.D.

13  Cal. 1990).

14          Here, unless the TRO remains in place and a preliminary injunction is

15  granted prohibiting Green from dissipating his assets, Green will not be deterred by the

16  threat of monetary damages.  As noted in the Wynne Decl. at ¶ 2, FINRA issued a cease

17  and desist order against Crocker, all but assuring that Crocker will cease to exist as a

18  going concern.  While Pershing has not yet conducted discovery and, accordingly, does

19  not know the extent to which Green personally profited from this fraudulent scheme,

20  Crocker's more than precarious situation coupled with the instant litigation creates a

21  realistic threat that Green may take steps to conceal his assets in advance of the

22  ultimate hearing on the merits.  Accordingly, Pershing needs this court's contempt

23  power to ensure that there will be assets available to satisfy its judgment.

24          **2.    The Grupo Mexicano Decision is Distinguishable**

25          Green's reliance upon Grupo Mexicano de Desarollo, S.A. v. Alliance Bond

26  Fund, Inc., 119 S. Ct. 1961 (1999) is misplaced and, in fact, bolsters Pershing's claim

27  that it is entitled to injunctive relief.  In contrast to the instant case, in Grupo Mexicano,

28                                          - 8 -                            KYL_SF463818

1   the Plaintiff sued for breach of contract on secured notes seeking *exclusively* legal

2   remedies in the form of damages.  Here, unlike the Plaintiff in Groupo Mexicano,

3   Pershing asserts both legal *and* equitable claims against Green.  The Ninth Circuit

4   addressed this very issue in In Re Focus Media Inc., et al. v. John P. Pringle, Chapter 7

5   Trustee, 387 F. 3d 1077, 1084 (9th Cir. 2004), noting that "Grupo Mexicano suggests that

6   when equitable claims are at issue, as opposed to solely legal damages claims, the rule

7   barring issuance of a preliminary injunction freezing assets is inapplicable."[7]  The In Re

8   Focus Media Court further noted that a preliminary injunction freezing assets is

9   appropriate under the circumstances present in the case at bar, holding that "when the

10  plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a

11  remedy involving those assets, a court may in the interim invoke equity to preserve the

12  *status quo* pending judgment where the legal remedy might prove inadequate and the

13  preliminary relief furthers the court's ability to grant the final relief requested." Id.  For

14  these reasons, Grupo Mexicano does not prevent Pershing from obtaining injunctive

15  relief against Green.

16      **D.    A Bond Need Not Be Posted Under the Circumstances**

17          The Court did not exceed its authority by not requiring that Pershing post a

18  bond.  As Green correctly notes in his Opposition (at p. 5), the Ninth Circuit has stated

19  that a district court may dispense with a bond where the court determines that there is

20  no realistic harm to a defendant from enjoining its conduct.  Jorgensen v. Cassiday, 320

21  F.3d 906, 919 (9th Cir. 2003).   Similarly, other Circuits have recognized the discretion of

22  the district courts in this regard.  See, e.g., Scherr v. Volpe, 466 F. 2d 1027, 1035 (7th Cir.

23  1972) [Holding a strong likelihood of success on the merits as sufficient justification for

24  dispensing with a security.]  See also, Elliot v. Kiesewetter, 98 F.3d 47, 60 [Waiving

25  _____

26  [7] The Court further noted that the Grupo Mexicano Court "was not presented with, nor did it choose to
    address, a situation in which equitable remedies were claimed," citing United States v. Oncology Assocs.,
27  P.C., 198 F. 3d 489, 496 (4th Cir. 1999)

28                                      - 9 -                          KYL_SF463818

1    requirement of a security where balance of potential hardships "weighs overwhelmingly

2    in favor of the party seeking the injunction."]

3            Here, Green has offered no admissible evidence to support his claim that he

4    will be harmed as a result of the Court's Order and Pershing has demonstrated a strong

5    likelihood of success on the merits of its claims against Green and Crocker.  Even if the

6    Court were to accept Green's counsel's unsupported representations that the Order will

7    prevent him from doing such things as paying bills or complying with alimony

8    obligations, the proper remedy is not dissolution of the Order.  Instead, the Court –

9    should it see fit to do so – can modify the Order to require Pershing to post security.[8]

10   **E.    Green's Petition to Compel Arbitration Should be Denied as FINRA's Rules Permit Pershing to Seek Equitable Relief Through the Courts**

12           Green's request that the Court compel this matter to arbitration is

13   premised on an erroneous interpretation of FINRA's rules governing intra-industry

14   disputes.  As a preliminary matter, Pershing does not dispute that the claims asserted in

15   its Complaint will *ultimately* be adjudicated before a FINRA Dispute Resolution

16   arbitration panel as provided for in FINRA Rule 13200(a).  However, FINRA's rules do

17   not preclude Pershing from seeking injunctive relief through the courts.  Indeed, FINRA

18   Rule 13804 specifically provides that "[i]n industry and clearing disputes required to be

19   submitted to arbitration under the [Code of Arbitration Procedure], parties may seek a

20   temporary injunctive order from a court of competent jurisdiction."  Indeed, because

21   FINRA does not provide a process by which industry members can request TROs and

22   preliminary injunctions, member firms like Pershing have no other option than to seek

23

24   [8] The primary purpose of security is to assure the Court that if it errs in granting injunctive relief to which the petitioning party is not entitled, "the moving party rather than the wrongfully-enjoined party will bear

25   the cost of the error" and "provide a wrongfully enjoined party a source from which it may readily collect damages. . . without regard to the moving party's solvency."  Schwarzer, Tashima and Wagstaffe, Cal Practice Guide:  Fed. Civ. Pro. Before Trial (TRG 2008) ¶13:192 at p. 13-92.  Green has made no showing

26   that – in the unlikely event the Court is found to have improperly issued the TRO – Pershing will not be able to compensate Green for any resulting harm.

27

28                                            - 10 -

1  this form of relief through the courts.  Pursuant to FINRA Rule 13804 (b)(1), it is not

2  until *after* the Court has issued a temporary injunctive order [in the form of a TRO or

3  preliminary injunction] that the moving party's request for permanent injunctive relief

4  (and ultimately the merits of the dispute) will be adjudicated before a FINRA-appointed

5  arbitration panel.  Accordingly, Pershing is entitled to seek injunctive relief from this

6  Court and Pershing respectfully submits that Green's Motion to Compel Arbitration

7  should be denied.

8       **F.**    **Expedited Discovery is Appropriate Under the Circumstances**

9          The Court did not err in allowing Pershing to conduct expedited discovery

10  in advance of the date set for the preliminary injunction hearing.  Contrary to Green's

11  claims, Pershing does not seek to engage in "extensive pre-trial discovery ... not

12  available in securities arbitration proceedings." (Motion at p. 7).  Pershing requested

13  (and the Court ordered) that it be permitted to serve deposition notices on an expedited

14  basis to help it ascertain the full scope of the fraudulent scheme perpetrated by Green

15  and Crocker, and trace the millions of dollars that Defendants withdrew from the

16  account at Pershing.  The limited discovery Pershing seeks to conduct is in furtherance

17  of its Application for Preliminary Injunction and the testimony adduced and documents

18  obtained will be used for that purpose.

19

20  /// 

21  /// 

22  /// 

    /// 

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISSOLVE TRO, STAY
PROCEEDINGS AND COMPEL ARBITRATION -- Case No. cv-08-3141 WHA

IV.    **CONCLUSION**

For the foregoing reasons, Pershing respectfully requests that the Court deny Green's Motion for Dissolution of Ex Parte Order Granting TRO and Order to Show Cause, and to Stay this Proceeding and to Compel Arbitration

DATED: July __, 2008                          /s/ Peter R. Boutin
                                              PETER R. BOUTIN
                                              GORDON C. YOUNG
                                              KEESAL, YOUNG & LOGAN
                                              ATTORNEYS FOR PLAINTIFF
                                              PERSHING LLC

KYL_SF463818

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISSOLVE TRO, STAY PROCEEDINGS AND COMPEL ARBITRATION -- Case No. cv-08-3141 WHA