GEORGE L. GUERRA, CASB No. 158263
FOWLER WHITE BOGGS BANKER P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, Florida 33602
Tel: (813) 228-7411
Fax: (813) 229-8313
Email: george.guerra@fowlerwhite.com

Attorney for Defendant
DOUGLAS GREEN

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PERSHING LLC, | ) | CASE NO. CV-08-3141 WHA |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OF POINTS AND** |
| | ) | **AUTHORITIES IN SUPPORT OF** |
| vs. | ) | **MOTION FOR ATTORNEYS' FEES** |
| | ) | **AND COSTS** |
| CROCKER SECURITIES LLC | ) | |
| and DOUGLAS GREEN, | ) | **HEARING DATE:** OCT. 2, 2008 |
| | ) | **HEARING TIME:** 8:00 A.M. |
| Defendants. | ) | **LOCATION:** COURTROOM 9 |
| | ) | |
| | ) | |
| | ) | |

### I.    STATEMENT OF ISSUES

Whether Defendant Douglas Green may recover attorneys' fees incurred by him to

defend against an *ex parte* Temporary Restraining Order ultimately found to be frivolous and

an Order expediting discovery.

### II.    STATEMENT OF RELEVANT FACTS

On or about July 1, 2008, this Honorable Court granted Plaintiff's *ex parte* motion for

TRO (effectively freezing Douglas Green's assets) and motion for expedited discovery. No

bond was required. Mr. Green's emergency motions to dissolve the *ex parte* Order and for

protective order preventing discovery were granted on July 7, 2008 by the Honorable Charles

R. Breyer. On July 11, 2008, this Court, on its own motion, issued an Order to Show Cause

why Gordon C. Young Esq. "[s]hould not be required to reimburse defendants for all fees

and expenses incurred in obtaining a dissolution of the TRO . . . ." A hearing on the Order to

Show Cause took place before this Court on July 16, 2008. See Exhibit A, Transcript of

Hearing on Order to Show Cause. Among other things, counsel for the Plaintiff failed to

disclose both Plaintiff's obligation to arbitrate the subject dispute and a venue provision in

Plaintiff's contract requiring arbitration in Milwaukee, Wisconsin. The Court concluded the

TRO would never have been granted had Plaintiff disclosed those facts. See Exhibit A,

Transcript of Hearing on Order to Show Cause pp 12:21-24.

## III.    ARGUMENT

### A.    Rule 11 Standard

Federal Rule of Civil Procedure 11(b) ("Rule 11") states in relevant part that by

presenting to the court any pleading, written motion, or paper, whether by signing, filing or

advocating, counsel certifies to the best of his knowledge, information, and belief, that:

> (1) it is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needlessly increase in the cost of litigation;

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

> *        *        *

2

It is proper to impose appropriate sanctions against any law firm, partner, or party who has presented a frivolous motion or argument in violation of Rule 11(b); Saratoga Savings & Loan Association v. Tate, 1988 U.S. Dist. LEXIS 16573, *6 (N.D. Cal. 1988) ("Sanctions can be imposed if the pleading signed by the attorney is frivolous, legally unreasonable or without factual foundation."). Requiring payment of the attorneys' fees and costs incurred by the party who responded to the frivolous motion or pleading constitutes an appropriate Rule 11 sanction. See Fed. R. Civ. P. 11(c)(4); McMahon v. Pier 39 Ltd. Partnership, 2003 WL 22939233, *9 (N.D. Cal. 2003) (directing defendants to submit a declaration detailing attorneys' fees and costs to determine the appropriate amount of sanctions under Rule 11). Further, a district court retains jurisdiction to impose Rule 11 sanctions even after voluntary dismissal of the action.[1] See Tate, 1988 U.S. Dist. LEXIS 16573 at *12.

A motion for sanctions pursuant to Rule 11 must describe the specific conduct that allegedly violated Rule 11(b). Fed. R. Civ. P. 11(c)(2). Further, the motion must be served, but not filed or presented to the court, if the filing challenged as frivolous is withdrawn and appropriately corrected within 21 days after service.[2] Id.

**B.     Attorneys' Fee Sanctions Are Warranted Pursuant to Rule 11**

Pershing's counsel failed to raise multiple issues at the *ex parte* hearing, despite the Court's direct request for any information that would call into question Plaintiff's entitlement

---

[1] Plaintiff voluntarily dismissed its Complaint on July 11, 2008, after this Court entered the Order to Show Cause.

[2] The dissolution of the TRO and Plaintiff's subsequent voluntary dismissal has rendered this provision of Rule 11 moot. Serving the Motion for Fees 21 days in advance of filing to allow retraction or cure of the offending document is illogical, and indeed impossible, in the case at bar. During the good faith conference with counsel for Plaintiff, the parties were unable to come to an alternative resolution to filing the subject motion.

to the TRO. See Exhibit A, Transcript of Hearing on Order to Show Cause pp 12:14-21;

Exhibit B, Transcript of *Ex Parte* TRO Hearing pp 3:18-21.

Among other things, the Court was not informed that:

- The dispute was subject to arbitration.

- A venue provision in Plaintiff's contract required it to file its motion for preliminary injunctive relief in Wisconsin.

- At 12:47 p.m. Pacific Time on July 1, 2008, counsel for Pershing faxed to Mr. Green and his counsel a notice of the *ex parte* application to be heard by the Court at 1:45 p.m. that same day. The Court was not informed that attendance by Green's counsel was an impossibility.

- Mr. Green's counsel requested copies of all documents filed on Plaintiff's behalf in connection with the TRO and an opportunity to be heard. No moving papers or supporting documentation were provided until *after* the hearing had concluded and the Court had entered its Order.

- Pershing's counsel failed to disclose that FINRA Rule 13804(a) obligated Plaintiff to contemporaneously file the motion for temporary injunctive relief with the Director of arbitration, which Plaintiff failed to do.

This Court concluded that if it had been made aware of the arbitration agreement and venue provision in the first instance, the TRO would not have been granted. As a result, this Court gave counsel for Mr. Green leave to "[b]ring a motion for fees based on the fact that this was a frivolous TRO to begin with . . . ." Exhibit A, Transcript of Hearing on Order to Show Cause pp 14:20-2; see also Civil Pretrial Minutes for the Order to Show Cause Proceeding. Therefore, Rule 11 sanctions in the form of an award of reasonable attorneys'

4

fees and costs, is warranted. The undersigned has submitted an affidavit to this Court in support of the subject motion as well as copies of invoices that delineate the services rendered and charges incurred in connection with dissolving the TRO and requesting a protective order to halt the expedited discovery process (See Exhibit C).

## IV.    CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Rule 54-6(b)(1) of the Civil Local Rules for the Northern District of California, the undersigned warrants that a good faith telephonic conference was held on July 23, 2008 with counsel for Pershing LLC, in attempts to resolve the subject Motion for Attorneys' Fees and Costs.

Respectfully submitted,


s/ George Guerra
George Guerra, Esq, CASB 158263
FOWLER WHITE BOGGS BANKER P.A.
501 East Kennedy Boulevard, Suite 1700
Tampa, FL 33602-5200
Telephone: 813-228-7411
Fax: 813-229-8313
Counsel for Defendant Douglas Green

United States District Court

Northern District of California

Before The Honorable William Alsup

Pershing, LLC,                    )
                                  )
          Plaintiff,              )
                                  )
    vs.                           )          No. C08-3141 WHA
                                  )
Crocker Securities, LLC,          )
                                  )
          Defendant.              )
_____  )

San Francisco, California
Wednesday, July 16, 2008

**Reporter's Transcript Of Proceedings**

**Appearances**:

For Plaintiff:          Keesal, Young & Logan
                        Four Embarcadero Center, Suite 1500
                        San Francisco, California  94111
                   By:  **Gordon Craig Young, Esquire**

                        Keesal, Young & Logan
                        Four Embarcadero Center, Suite 1500
                        San Francisco, California  94111
                   By:  **Peter R. Boutin, Esquire**

For Defendant:          Tesler Sandmann & Fishman
                        163 Miller Avenue, Suite 4
                        Mill Valley, California  94941
                   By:  **Peter Bradford Sandmann, Esquire**

*Reported By:*          *Sahar McVickar, RPR, CSR No. 12963*
                        *Official Reporter, U.S. District Court*
                        *For the Northern District of California*

(Computerized Transcription By Eclipse)

```
 1   Wednesday, July 16, 2008                        1:30 p.m.

 2                    P R O C E E D I N G S

 3            THE CLERK:  Calling civil case C08-3141, Pershing,

 4   LLC, versus Crocker Securities, LLC.

 5            Counsel, please state your appearances for the

 6   record.

 7            MR. YOUNG:  Gordon Young, I believe in this matter

 8   appearing on behalf of myself.

 9            MR. SANDMANN:  Peter Sandmann for defendant, Douglas

10   Green.

11            MR. BOUTIN:  Peter Boutin appearing for Pershing.

12            THE COURT:  All right, we are here on an order to

13   show cause.  I think we all know why we are here.

14            Everyone have a seat.

15            Mr. Young, what would you like to say on the order

16   to show cause?

17            MR. YOUNG:  May I come to the podium, Your Honor?

18            THE COURT:  Yeah, please.

19            MR. YOUNG:  I have a prepared statement.  I can

20   provide that to the court reporter.

21            Well, I guess I want to start by thanking Your Honor

22   for giving me the opportunity to try and clear this up.  I did

23   what the Court instructed me to do in the order.  I read

24   Judge Breyer's -- the transcript of the proceedings before

25   Judge Breyer.  I read it several times.
```

1          I reread the transcript of my interactions with the

2     Court on July 1st.  I will say that I believe now what I

3     believed when I appeared in front of you on July 1st, and that

4     is that Pershing was entitled to a temporary restraining order,

5     and that I was honest when I answered your questions.

6          I am very concerned, though, about what Judge Breyer

7     had to say on the two issues that he flagged that he believes I

8     should have brought to your attention.  And obviously, I'm very

9     concerned about the order to show cause that was issued to me

10    because it leads me to believe that this Court also thinks I

11    should have brought those issues to your attention at the time

12    I appeared for -- to obtain the TRO.

13         So, with that, I -- if I could, I would like to give

14    the Court a little bit of background on what led to my

15    appearance on July 1st.  The -- I was asked to get involved in

16    this matter on Sunday, July 29th.  I received a call from

17    Mr. Boutin, who asked me to come down to the office in the

18    afternoon because we had an emergency situation for an

19    important client.

20         They had just discovered that there was a trading

21    scheme that had been implemented by the defendants, where they

22    were placing trades on -- placing trades where the -- showing

23    sales of securities to other parties for mortgage-backed

24    securities that were at inflated prices and that turned out to

25    be falsified because the parties on the other side didn't even

1    know that these trades had been placed.  That allowed the value

2    of the account that -- the Crocker account, at -- that was

3    cleared through Pershing to appear greater, have a greater

4    value than it actually did because these weren't truthful

5    sales.

6            As a result, Pershing was loaning money to Crocker

7    with the belief that they were actually engaged in profitable

8    trades when, in fact, they were fictitious because they ruled

9    out the closing dates.

10           In the less than 48 hours between the time I got

11   involved and the time that I appeared before you, we also

12   learned that the -- that FINRA, the regulatory body, was

13   issuing a cease and desist order to -- to Crocker and -- which

14   we believed has turned out to be the case would ultimately end

15   their -- their -- end them as a broker/dealer, which it has.

16   They have now filed a Form BEW to withdraw as a broker/dealer

17   with the SEC and with FINRA.

18           So I -- we were putting together the papers.  I

19   worked on all of the papers that were involved.  I worked with

20   interviewing the witnesses to determine what had actually

21   occurred here.  And then we came down here to get before

22   Your Honor as quickly as we could to try and get a restraining

23   order that would prevent the dissipation of these monies that

24   had been -- that Crocker -- that had been given to Crocker and

25   which we understand had been paid out to Mr. Green.

1          So I felt like we met the test, and I still feel

2     like we met the test for a restraining order under -- under the

3     circumstances.  We had a real good faith emergency.  We had

4     some very bad conduct that had been uncovered.  And we were

5     working as quickly as we could on behalf of Pershing to try and

6     get them through the Rules of Civil Procedure.

7          The remedies that were potentially available to them

8     to try and keep -- try and keep everything from falling apart,

9     to freeze things in place so that we could do an accounting, we

10    could figure out what occurred.  And ultimately, they would be

11    in a position so that they could potentially recover and at

12    least figure out where all of this money had gone.

13         So, having said that -- obviously, I've read the

14    transcript, and Judge Breyer criticizes me in the transcript

15    for not bringing two issues to your attention.  One, is -- the

16    first is arbitration.  He believes that I should have -- have

17    told you that in response to your questions that this was a

18    case that was ultimately headed for arbitration.

19         I need to first say that I hadn't even thought that

20    far down the road.  I knew that this was a member firm, was a

21    member firm.  I knew from my work as a securities arbitration

22    lawyer that this was a dispute that was ultimately arbitrable.

23    But I did not ever consider, and I still don't believe, that

24    the fact that this case could or would ultimately end up in

25    arbitration impacted our ability to get -- or Pershing's

1   ability to get a temporary restraining order from the Court.

2           The reason for that is I'm familiar with Rule 13804,

3   which says that the only way that you can get a restraining

4   order is if you come to a court of -- come to the Court to get

5   it.  You can't get it in arbitration.

6           You used to be able to; back in the late '90s, you

7   used to be able to file and get injunctive relief either in the

8   Court or through arbitration.  And then they changed the rule

9   because arbitration is not equipped for it.  So you come to the

10  Court to get what they -- what the rule refers to as temporary

11  injunctive relief, which I have also understood, and which was

12  defined under the previous rule as a temporary restraining

13  order or a preliminary injunction.

14          So, when -- when you asked me was there -- was there

15  anything that the other side would raise that would call into

16  question whether or not we were entitled to the TRO, it did not

17  occur to me that arbitration was something that called into

18  question our ability to get the TRO.

19          The second issue that Judge Breyer said that I

20  should have brought to your attention was the venue provision.

21  I was aware of the venue provision in the contract, but the

22  reason that I did not -- I did not mention the venue provision

23  is because I did not believe that the venue provision had --

24  would ever be enforced by the one party, which was Crocker, who

25  was a signatory to the agreement that contained that provision.

1          And I don't mean to suggest by my next comment that

2     the ends justify the means, but they -- I was right, they

3     don't.  They have agreed now to go to -- forward in arbitration

4     in San Francisco.  They never raised the venue issue as -- as

5     an objection.

6          They are a Walnut Creek based company.  Pershing's

7     based in New York.  The reason they came here is because this

8     is where the defendant was, this is where Crocker was.  Nobody,

9     not my client, not Crocker, not Mr. Green, was anywhere near

10    the Eastern District of Wisconsin.  So -- and so I -- it

11    just -- I did not believe that that provision was ever going to

12    be enforced by anybody else.

13          Now, Judge Breyer asked Mr. Boutin some questions

14    about whether or not we -- we sought a specific waiver of that

15    provision, and we did not.  And I -- I didn't think in terms of

16    seeking out a waiver to the provision.  I assumed that they

17    were going to waive it on their own.

18          I guess the last thing I would just say is that, you

19    know, I take my obligations to this Court very seriously.  I

20    have never received an order to show cause like this.  I've

21    never been told that anybody's ever referred me to the State

22    Bar.

23          I will tell you, Your Honor, that since I received

24    your order last Friday, it's been a horrible couple of days.

25    This is difficult for me, because I'm used to speaking on

1    behalf of other people as opposed to myself, but I -- I don't

2    believe in my heart that I attempted to mislead you, and that

3    was never what I would want to do.  And no order is so

4    important to me that I would risk misleading the Court and

5    misleading Your Honor.

6            So with that, I -- I would ask that the Court not

7    issue the order that's being contemplated, not refer me to the

8    State Bar, and not order me to pay the fees to Mr. -- to

9    Mr. Green for the dissolution proceedings.

10           I think I came down here in good faith.  I think I

11   obtained the order that I should have received.  I --

12   respectfully, I have tremendous respect for Judge Breyer, I

13   disagree with his order dissolving the TRO, I think we should

14   still have an injunction in place, and we don't.

15           Anyway, I'm happy to answer any questions the Court

16   may have.

17           **THE COURT:**  Didn't your arbitration agreement say

18   that injunctive relief could be issued by the arbitrators?

19           **MR. YOUNG:**  I'd have to go back and look at the --

20   at the agreement as to whether it said it could be issued --

21           **THE COURT:**  Does anybody have that agreement here?

22           **MR. YOUNG:**  I have it here, Your Honor.

23           **THE COURT:**  Let's take a look at the one --

24           **MR. YOUNG:**  The one that was attached to the

25   complaint?  The agreement?

1             **THE COURT:**  This is in addition to the FINRA rules.

2    This is over and above the FINRA rules.

3             What does it say about injunctive relief?

4             **MR. YOUNG:**  That -- that -- that it could be filed

5    in the Eastern District of Wisconsin.

6             **THE COURT:**  What could be filed?

7             **MR. YOUNG:**  An action for -- for injunctive relief.

8             Am I misreading it, Your Honor?  I'm sorry.

9             **THE COURT:**  Well, maybe that's what I'm remembering.

10            All right, so you didn't file there, you filed here.

11   You didn't tell me this was subject to arbitration.  And at the

12   time the -- you filed this action, you had not commenced any

13   arbitration under FINRA.

14            **MR. YOUNG:**  Your Honor, may I speak to that issue?

15            **THE COURT:**  Yep.

16            **MR. YOUNG:**  I didn't.  And I want to be perfectly

17   candid before I start down this road.

18            I really didn't have arbitration in my mind at all.

19   I mean, we had not thought through the -- the end game of this

20   litigation.  It was a rush to get here before Your Honor to try

21   and freeze everything before we took the next step.

22            I am familiar with the FINRA rule, because I've been

23   involved in other injunction actions, where there's been court

24   and an arbitration component because there have been

25   injunctions sought from the Court under 13804.

1           My understanding of that rule has always been that

2      you get your injunction and then you file with FINRA.  So if

3      the issue had come up, and I don't want to -- I'm a little -- I

4      don't want to mislead the Court into believing that somehow

5      this was all in my mind because it really wasn't at the time I

6      was answering your questions, but my understanding of the way

7      it works is that you get your injunction, and FINRA only acts

8      on it if there is an injunction in place from the Court.

9           And the way it's always worked, in my experience, is

10     you get the injunction, the TRO, and you get a preliminary

11     injunction in court, and then it proceeds to FINRA for the

12     permanent injunction.

13          **THE COURT:**  Is that what Judge Breyer said?  I

14     thought he said you had to file first under FINRA and then go

15     to court.

16          **MR. YOUNG:**  He -- Judge -- Judge Breyer read 13804

17     as requiring us to file in -- if it assists the Court at all, I

18     have an extra copy of Rule 13804, if you're at all interested.

19          But what Judge Breyer clearly believed we should

20     have done is filed before -- before we appeared before Your

21     Honor.

22          **THE COURT:**  All right, what more would you like to

23     say?

24          **MR. YOUNG:**  Umm, I don't have anything other to add

25     other than what I've already stated, Your Honor.  I just, you

1    know, I take my job very seriously as an advocate and as an

2    officer of the Court.  And I endeavored to -- I tried in good

3    faith to fulfill both those responsibilities when I appeared

4    before you and I answered your questions.

5            **THE COURT:**  Mr. Sandmann, would you like to say

6    anything?

7            **MR. SANDMANN:**  I have nothing to say, Your Honor.

8            **THE COURT:**  Mr. Boutin, would you like to say

9    anything?

10           **MR. BOUTIN:**  No, Your Honor.

11           Thank you for your time.

12           **THE COURT:**  Mr. Sandmann, do you have -- are you

13   planning on making any motions for attorney fees beyond the

14   grounds that were set forth in the order to show cause?

15           **MR. SANDMANN:**  Your Honor, I'm not aware of any

16   other grounds, but I'm not the principal lawyer.  I'm here as

17   local counsel, and I can't speak for counsel in Florida.

18           **THE COURT:**  All right.

19           **MR. SANDMANN:**  I am prepared to tell the Court what

20   the incurred fees are at this point, but that is the only

21   information I have.

22           **THE COURT:**  What are they?

23           **MR. SANDMANN:**  They are slightly in excess of

24   $23,000, Your Honor.

25           **THE COURT:**  Well, let me say, Mr. Young, that one

1  thing I have learned in this job is the drastic harm that a TRO

2  can do somebody.  And it's a common trick for a lawyer to come

3  in here, tell me that they are entitled to a TRO, talk me into

4  it, or talk a judge into it, and then deal some devastating

5  blow to the other side, put them over a barrel and use that to

6  negotiate.  That's why in this country there is always two

7  sides to every story, I've learned that.

8           And I hate ex parte because I don't get to hear the

9  other side.  And you came in here and told me, well, you had

10  given them notice to show up, but they blew it off, so I went

11  ahead and heard you ex parte.

12           And then I asked you this question:  Is there any

13  information -- I explained to you that I don't like ex parte

14  because there is always two sides; I'm asking you as an officer

15  of the Court, is there any information that if the other side

16  were here they would bring to my attention that would draw into

17  question whether you're entitled to this TRO?

18           Now, I didn't ask you whether or not you had a good

19  answer to what they would say, I asked you whether or not -- to

20  make their argument, give me their main arguments that they are

21  going to make.  Any lawyer in your position should have raised

22  that arbitration clause and that venue clause.  I promise you,

23  I would not have granted your TRO if I had known about it.

24           I was outraged whenever I learned after the fact

25  that you had held that back.  And your excuses for holding that

1    back on the ground that you had some good answer to them,

2    that's not good enough.  It's for me to decide how good your

3    answers are, not for you to make -- take that upon yourself to

4    decide for me.

5           So as a result, you got the TRO and inflicted a

6    drastic remedy upon this company and shut them down.  They

7    weren't able to -- the assets were frozen as a result of what

8    you did not tell me in response to a direct question.

9           **MR. YOUNG:**  Your Honor, may I --

10          **THE COURT:**  I have not -- I have had -- you're not

11   the first lawyer who has done this to me.  I've had lawyers who

12   have told me -- what they tell me as far as they go is correct,

13   it's what they omit that is so devastating.

14          And then I find out later, the other side comes in

15   after the damage is done and says, wait, Judge, that was an

16   outrage, they should have told you this.  And I would say, my

17   God, if I had known that, I never would have granted your

18   relief.

19          This is why I'm slowly coming around to the view,

20   after a long time, that this is such an abused process, this

21   TRO and ex parte, that you should never grant them, never,

22   unless it's maybe the Government or somebody I could trust.

23   But individual private lawyers half the time misrepresent by

24   omission, not affirmatively, by omission, it's what they fail

25   to tell me.  So that's why I've learned the hard way to ask

1  this question:  Tell me what the other side would say.

2          Now, I have lawyers that do.  For example, I had a

3  case where they wanted to freeze an asset of the Argentine

4  Government; I said what would the other side say if they were

5  here.  And he laid out the argument very honestly what they

6  would say.  And he said here is what I would say in response.

7  I thought that probably the lawyer had made a good enough case,

8  I went ahead and froze the airplane.  We had that here for a

9  number of months.

10         That lawyer did it the right way, but you did it the

11 wrong way.  You just said, okay, I'm smarter than that judge.

12 I got a good answer.  I'll avoid prison or fraud or fines

13 because I got a good answer if I'm ever called on it.  And you

14 failed to tell me what I should have known, which was there was

15 an arbitration clause and a venue clause.  The venue was

16 somewhere else.  I just don't think you treated the Court

17 correctly.  I've said enough on this.

18         I'm not going to fine you, and I'm not going to make

19 you pay their fees.

20         Mr. Sandmann, if you want to bring a motion for fees

21 based on the fact that this was a frivolous TRO to begin with,

22 I'm going to let you do that, but I'm not going to do it on the

23 basis, at least, per se, that I got misrepresented.

24         *MR. SANDMANN:*  I'll so inform counsel, Your Honor.

25 Thank you.

1          **THE COURT:**  All right.

2          Mr. Young, I'm sorry that I have to be the first

3   judge to ever tell you this:  You are still a young guy, you

4   got a long time in your career.  I hope you take this to heart.

5   When Judge Breyer -- you can see how he felt about it.  You got

6   two judges now that feel that you have misled this U.S.

7   District Court.

8          You have a good reputation.  I'm not going to

9   sanction you, and I'm not going to send you to the State Bar.

10  I hope you take this to heart.  And in the future, when a judge

11  asks you as an officer of the Court, you -- you know, you wear

12  two hats, one as an advocate, one as an officer of the Court.

13  I mean, think about it from the point of view of the poor

14  judge, who is about to issue a drastic order that is going to

15  put somebody out of business for a while and how that judge is

16  going to feel whenever he finds out or she finds out that you

17  weren't completely candid.

18          When you are trying to get that kind of relief, the

19  adversary system breaks down.  And you, as an officer of the

20  Court, have a duty of candor to assist the Court in those

21  circumstances.  You are no longer just a straight-out advocate.

22          If Mr. Sandmann had been here, it would have been

23  much different.  He could have brought any arguments he wanted

24  to bring up, but he wasn't.  So that's all I got to say on

25  that.

1        As far as I'm concerned, it's history now.  And next

2  time you appear in front of me I'll try not to remember that

3  this ever happened.

4        I am going to remember this, though, it's a general

5  lesson:  Once again, I have learned the hard way that ex parte

6  and TROs should almost never be granted.  I don't care if they

7  say they are running off with the crown jewels, because I've

8  learned from you and a few other lawyers that you will not --

9  no matter what I ask you, you are going to say, oh, well, I

10  don't have to disclose that.  And so I'm just going to start

11  putting the burden on the lawyers in your position.  If you

12  want a TRO, you go out and get the other side here and let me

13  hear what they have to say first.

14        So you know I'm upset about it.  I was very upset

15  about it when I found out.  But I'm taking what you have to say

16  in your explanation to heart.  And I don't feel that -- I think

17  enough has been said.

18        So the order to show cause is discharged without

19  prejudice to a motion for attorney fees.  And it would be based

20  upon the merits of your -- the fact that this TRO should never

21  have been granted on the merits, okay?

22        All right, thank you.

23        **MR. YOUNG:**  Thank you, Your Honor.

24        **MR. BOUTIN:**  Thank you, Your Honor.

25              **(Proceedings adjourned at 1:58 p.m.)**

### CERTIFICATE OF REPORTER

I, Sahar McVickar, Official Court Reporter for the
United States Court, Northern District of California, hereby
certify that the foregoing proceedings were reported by me, a
certified shorthand reporter, and were thereafter transcribed
under my direction into typewriting; that the foregoing is a
full, complete and true record of said proceedings as bound by
me at the time of filing.  The validity of the reporter's
certification of said transcript may be void upon disassembly
and/or removal from the court file.


/s/ Sahar McVickar
_____

Sahar McVickar, RPR, CSR No. 12963

July 22, 2008

Volume 1

Pages 1 - 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

| | |
|---|---|
| PERSHING LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. C 08-3141-WHA |
| ) | |
| CROCKER SECURITIES LLC and ) | |
| DOUGLAS GREEN, ) | |
| ) | San Francisco, California |
| Defendants. ) | Tuesday |
| ) | July 1, 2008 |
| _____) | 2:00 p.m. |


**TRANSCRIPT OF PROCEEDINGS**


**APPEARANCES**:

**For Plaintiff**:           Keesal Young & Logan
                             Four Embarcadero Center, Suite 1500
                             San Francisco, CA  94111
                             (415) 398-6000
                             (415) 981-0136 (fax)
                        **BY:  GORDON CRAIG YOUNG**



**Reported By:      Lydia Zinn, CSR #9223, RPR**
                   **Official Reporter - U.S. District Court**

 1              THE COURT:  Is there somebody here on a T.R.O.?

 2              MR. YOUNG:  Yes, your Honor.

 3              THE CLERK:  Case number, for the record, 08-3141,

 4   Pershing, L.L.C., versus Crocker Securities, L.L.C.

 5              Counsel, can you please state your appearance?

 6              MR. YOUNG:  Yes, I can.  Good afternoon, your Honor.

 7   Gordon Young, appearing on behalf of plaintiff, Pershing.

 8              We are seeking a temporary restraining order.

 9              THE COURT:  Why is isn't the other side here?

10              MR. YOUNG:  We gave them notice.  I'm not sure if

11   they're going to come or not.  I'm not sure if they're

12   represented or not.

13              THE COURT:  When did you give them notice?

14              MR. YOUNG:  We told their attorney yesterday that we

15   would be filing at some point today.  We -- when I left the

16   office approximately an hour, an hour and a half ago, someone

17   was calling to them let them know that we were on our way down

18   here.  Obviously, we didn't know what time we would be

19   appearing in front of your Honor, or whether we would.

20              THE COURT:  How did they know what courtroom to go

21   to?

22              MR. YOUNG:  I believe we told them that it was your

23   Honor's courtroom.

24              THE COURT:  How did you know you had me as the judge

25   yet?

1          **MR. YOUNG:**  We filed our lawsuit yesterday.  And we

2     were assigned to you as a judge.  We filed our T.R.O. papers

3     this morning.

4          **THE COURT:**  And so you told them to come to my

5     courtroom?

6          **MR. YOUNG:**  One of my colleagues did, yes,

7     your Honor.

8          **THE COURT:**  You're sure of that?

9          **MR. YOUNG:**  I can't be sure.  I just sent them an

10    e-mail when I found out that you were going to hear me today,

11    asking if he had filed the electronic declaration stating what

12    notice he had given; but those were his instructions.

13         **THE COURT:**  Well, now I've lost the T.R.O. that I --

14    I mean, the order that -- what did I do with it?

15         All right.  The last time I did a T.R.O., the lawyer

16    concealed information from me.  I don't like *ex parte*, because

17    there are always two sides to every story.  I'm asking you as

18    an officer of the Court:  is there any information that, if the

19    other side were here, they would bring to my attention that

20    would draw into question whether you're entitled to this

21    T.R.O.?

22         **MR. YOUNG:**  I'm not aware of any, your Honor.

23         If there are questions that the Court asks as we go

24    through --

25         **THE COURT:**  No.  I don't have time to -- you

1   submitted eight inches of material.  If you want to come back

2   in three days, I will give you an answer; but no, you're

3   sitting here now, standing here now, wanting an answer on your

4   T.R.O.  That's the way you T.R.O. lawyers like to do it.  And

5   then you put me in a position where I have to rule quickly.

6          So if I'm going to do that *ex parte*, without the

7   other side here, I want your promise -- promise -- that this is

8   honest, and there's not anything left out of it that's going to

9   embarrass you or me later.

10          **MR. YOUNG:**  There is nothing, your Honor.

11          **THE COURT:**  All right.  I'm going to grant it, then.

12          **MR. YOUNG:**  Thank you.

13          **THE COURT:**  Let's pick a day.  It's going to be

14   July 16th.  That's going to be what day.

15          Dawn, we have a trial that day?

16          **THE CLERK:**  Correct, your Honor.

17          1:30 or 2:00 o'clock.

18          **THE COURT:**  1:30 p.m.

19          **THE CLERK:**  Oh, okay.  1:30.

20          **THE COURT:**  I just want to give them until -- give

21   the other side until July 11th to file any opposition.

22          You've got to serve this document today.  All right?

23          **MR. YOUNG:**  Yes, your Honor.

24          **THE COURT:**  So they get until July 11th.

25          Then you have until July 14th to file any reply.  And

1  today is July 1.

2           All right.  I'm handing this order down to you, based

3  on -- I haven't read -- the let the record be clear.  I haven't

4  read that eight inches of material.  It would take me days to

5  master that.

6           **MR. YOUNG:**  I understand that.

7           **THE COURT:**  I'm relying solely on your representation

8  orally to me that this is in order.

9           **MR. YOUNG:**  It is, your Honor.

10          **THE COURT:**  I hope it proves out.

11          **MR. YOUNG:**  I'll be back on July 16th.

12          **THE COURT:**  That case we have over there (indicating)

13 -- that was devoted to a case where the T.R.O. was obtained on

14 material omissions.  And it wound up having an entire trial.

15 And the lawyers, I think, that made the omissions regret the

16 day this they did so; but I'm sure you're being honest with me,

17 and that it was not a problem.  All right.

18          **MR. YOUNG:**  Thank you very much, your Honor.

19          **THE COURT:**  All right.

20          **MR. YOUNG:**  And the only other issue was we were also

21 asking for expedited discovery.

22          **THE COURT:**  I signed your order.  Is that in there,

23 or not?

24          **MR. YOUNG:**  I believe it is.

25          **THE COURT:**  Well, you'd better look and see.  It's

1    okay with me to take expedited --

2              MR. YOUNG:  I spent a lot of sleepless nights.

3              THE COURT:  Make sure you got what you wanted there.

4              MR. YOUNG:  Thank you.  Just give me a moment.  Yes,

5    it is in here.

6              THE COURT:  Okay.

7              MR. YOUNG:  Thank you very much.

8              THE COURT:  See you back here in a couple weeks.

9              THE COURT:  So long.

10             THE CLERK:  I will scan that and make sure it's

11   docketed within the next hour.

12             MR. YOUNG:  Should I wait here for it?

13             THE CLERK:  You can get it on line.  If you can

14   access the docket, it will be on there within the next hour.

15   It will be scanned out there, so you can print out a copy.

16             MR. YOUNG:  Thank you very much.

17             (At 2:06 p.m. the proceeding adjourned.)

18

19

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

       I, LYDIA ZINN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C-08-03141-WHA, Pershing v. Crocker, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

    The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

/s/ Lydia Zinn, CSR 9223, RPR

Friday, July 11, 2008

GEORGE L. GUERRA, CASB No. 158263
FOWLER WHITE BOGGS BANKER P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, Florida 33602
Tel: (813) 228-7411
Fax: (813) 229-8313
Email: george.guerra@fowlerwhite.com

Attorney for Defendant
DOUGLAS GREEN

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## CIVIL DIVISION

| | |
|---|---|
| PERSHING LLC, ) | CASE NO. CV-08-3141 WHA |
| ) | |
| ) | **DECLARATION OF** |
| Plaintiff, ) | **GEORGE L. GUERRA** |
| ) | |
| vs. ) | |
| ) | |
| CROCKER SECURITIES LLC and ) | |
| DOUGLAS GREEN, ) | |
| ) | |
| Defendants. ) | |

I, George L. Guerra, declare:

1.  I am over the age of 18 and licensed to practice law in California and Florida.

2.  Attached hereto is a true and correct copy of the invoices prepared by Fowler White in connection with the above captioned matter.

3.  The invoices reflect work performed on behalf of Mr. Green to dissolve the TRO and to vacate the order allowing for expedited discovery obtained by the plaintiff in this matter.

1

Declaration of George Guerra Case 3:08-cv-3141 WHA

4. Mr. Green is responsible and liable for the subject fees as a result of having retained this firm and agreeing to pay same.

I declare under penalty of perjury under the laws of the United States and the States of California and Florida that the foregoing is true and correct.

Executed this 15th day of July, 2008 at Tampa, Florida.

George Guerra, Esq. CASB 158263
FOWLER WHITE BOGGS BANKER P.A.
501 East Kennedy Boulevard, Suite 1700
Tampa, FL 33602-5200
Telephone: 813-228-7411
Fax: 813-229-8313
Counsel for Defendant Douglas Green

2

Declaration of George Guerra Case 3:08-cv-3141 WHA



# FOWLER WHITE BOGGS BANKER

### ATTORNEYS AT LAW

ESTABLISHED 1943

Douglas Green
2848 Northeast 32nd Street
Lighthouse Point, Florida 33064

July 16, 2008
Invoice 680053
Tax # 59-1280172
Page 1
BWW/1082409

Re:  1082409
     Pershing LLC v Crocker Securities and Douglas Green

### Professional Services Through 07/15/08

| Date | Description | | | |
|---|---|---|---|---|
| 07/01/08 | Telephone conference with P. Boutin and G. Wynne re: injunctive action and request for all relevant papers, as well as request to appear at hearing and be heard (.4); Telephone conference with George Guerra to discuss handling of case (.4); Email to P. Boutin requesting papers and opportunity to be heard at TRO hearing (.3); Telephone conference with D. Green regarding conversation and call with G. Wynne (.8); Review of TRO and case correspondence (.6). | BWW | 2.50 | hrs. |
| 07/01/08 | Draft opposition to TRO; contact opposing counsel, counsel for Crocker Securities and Court's judicial assistant; Telephone conference with A. Fishman regarding filing papers in opposition to TRO; review Order as entered; telephone conference with D. Green regarding Order and obligations thereunder; analysis of Order and development of theories upon which to seek dissolution. | GG | 3.20 | hrs. |
| 07/01/08 | Legal research re: injunction and freeze of assets. | ML | 1.50 | hrs. |
| 07/02/08 | Telephone conferences with George Guerra and Peter Boutin. | BWW | 1.00 | hrs. |

FOWLER WHITE BOGGS BANKER P.A.

TAMPA • ST. PETERSBURG • FORT MYERS • TALLAHASSEE • ORLANDO • JACKSONVILLE • FORT LAUDERDALE

501 EAST KENNEDY BLVD., SUITE 1700 • TAMPA, FLORIDA 33602 • P.O. BOX 1438 • TAMPA, FL 33601
TELEPHONE (813) 228-7411 • FAX (813) 229-8313 • www.fowlerwhite.com

EXPENSES ARE BILLED AT ACTUAL COST DETERMINED IN ACCORDANCE WITH ABA GUIDELINES.



# FOWLER WHITE
# BOGGS BANKER

### ATTORNEYS AT LAW

ESTABLISHED 1943

Douglas Green
2848 Northeast 32nd Street
Lighthouse Point, Florida 33064

July 16, 2008
Invoice 680053
Tax # 59-1280172
Page 2
BWW/1082409

| Date | Description | Atty | Hours | |
|------|-------------|------|-------|---|
| 07/02/08 | Receipt and review of initial deposition notices for D. Green and B. Cooper (.4); Receipt and review of Supplemental Order (to Order Setting Initial Case Management conference) (.3); Exchange of email with P. Boutin regarding acceptance of service and confirming receipt of documents (.3). | GG | 1.00 | hrs. |
| 07/02/08 | Receive and review Plaintiff's complaint and memorandum in support of TRO; direct, review and supplement legal research re: bond, standing for issuance of injunction, personal jurisdiction, FINRA Rules, and asset freeze; work with Ms. Heller on draft of memorandum of points and authorities in support of motion. | ML | 8.00 | hrs. |
| 07/02/08 | Legal research and review of Ninth Circuit law on bond requirement for preliminary injunction; draft arguments in connection with Memorandum in Support of Motion to Dissolve/ Compel; legal research and review regarding California's long arm statute for personal jurisdiction argument; analysis of personal jurisdiction issues; review Local Civil Rules for formatting requirements. | DH | 6.30 | hrs. |
| 07/02/08 | Review of account statements and other documentation related to investigation; Scan account statements to system (.5). | JCR | 0.50 | hrs. |
| 07/03/08 | Review draft Motion for Dissolution and Motion for Protective Order and memoranda in support of motions. | BWW | 0.50 | hrs. |

FOWLER WHITE BOGGS BANKER P.A.

TAMPA · ST. PETERSBURG · FORT MYERS · TALLAHASSEE · ORLANDO · JACKSONVILLE · FORT LAUDERDALE

501 EAST KENNEDY BLVD., SUITE 1700 · TAMPA, FLORIDA 33602 · P.O. BOX 1438 · TAMPA, FL 33601
TELEPHONE (813) 228-7411 · FAX (813) 229-8313 · www.fowlerwhite.com

EXPENSES ARE BILLED AT ACTUAL COST DETERMINED IN ACCORDANCE WITH ABA GUIDELINES.



# FOWLER WHITE
# BOGGS BANKER

ATTORNEYS AT LAW

ESTABLISHED 1943

Douglas Green
2848 Northeast 32nd Street
Lighthouse Point, Florida 33064

July 16, 2008
Invoice 680053
Tax # 59-1280172
Page 3
BWW/1082409

| Date | Description | | | |
|---|---|---|---|---|
| 07/03/08 | Telephone conference with B. Wiand (.2); tel. conf. with B. Falk (.3); various telephone conference with opposing counsel P. Boutin, C. Stern, and G. Wynne (1.4); telephone conference with D. Green regarding status (1.0); telephone conference with D. Green (.5); review papers, Court file and work on opposition papers including analyses of jurisdictional issues with Ms. Heller and Mr. Lamont (5.6). | GG | 9.00 | hrs. |
| 07/03/08 | Additional legal research re: protective order; asset freeze; drafted motion for dissolution of order and to compel arbitration; telephone call with D. Green re: case. | ML | 5.50 | hrs. |
| 07/03/08 | Continue draft and revision process for Motion to Dissolve/ Stay/ Compel and Memorandum in Support; legal research re grounds for protective order and good faith conferral under California law; draft and revise Motion for Emergency Protective Order and Memorandum of Law in support; draft and revise proposed orders for Motion to Dissolve/ Stay/ Compel and Motion for Emergency Protective Order; telephone conference with Judge Alsup's and Judge Breyer's Judicial Assistants re scheduling of hearing; final review and filing of Motions, Supporting Memoranda, and Proposed Orders. | DH | 10.10 | hrs. |
| 07/06/08 | Telephone conference with D. Green; draft and revise declarations in support of various motions; correspondence to Mr. Green; | GG | 1.00 | hrs. |

FOWLER WHITE BOGGS BANKER P.A.

TAMPA • ST. PETERSBURG • FORT MYERS • TALLAHASSEE • ORLANDO • JACKSONVILLE • FORT LAUDERDALE

501 EAST KENNEDY BLVD., SUITE 1700 • TAMPA, FLORIDA 33602 • P.O. BOX 1438 • TAMPA, FL 33601
TELEPHONE (813) 228-7411 • FAX (813) 229-8313 • www.fowlerwhite.com

EXPENSES ARE BILLED AT ACTUAL COST DETERMINED IN ACCORDANCE WITH ABA GUIDELINES.



# FOWLER WHITE BOGGS BANKER

ATTORNEYS AT LAW

ESTABLISHED 1943

Douglas Green
2848 Northeast 32nd Street
Lighthouse Point, Florida 33064

July 16, 2008
Invoice 680053
Tax # 59-1280172
Page 4
BWW/1082409

| 07/07/08 | Initial telephone conference with P. Sandmann regarding hearing; revise declarations, file and serve same (.8); draft, file and serve request for judicial notice of FINRA rules (.3); forward statement of financial condition to P. Boutin with correspondence (.3); tel. conf. with D. Green (.8). Receipt and review of amended deposition notices (.2); exchange correspondence with P. Sandmann (.2); contact Court regarding hearing time (.3); | | |
|---|---|---|---|
| | | GG | 2.90 hrs. |
| 07/07/08 | Telephone conference with Doug Green (2x) (1.0); Review opposition papers and cases cited by Plaintiff (1.5); Telephone conference with B. Cooper (.4); Tel. conf. with P. Sandmann in preparation for hearing on Motion for Dissolution (.3).; Tel. conf. with P. Sandmann regadring outcome of hearing (.3). | | |
| | | GG | 3.50 hrs. |
| 07/07/08 | Receive and review Plaintiff's response in opposition to motion to dissolve and to compel arbitration. (.50) | | |
| | | ML | 0.50 hrs. |
| 07/08/08 | Telephone conference with D. Green regarding removal of freeze on accounts (2x); telephone conference with Sandmann law firm regarding invoice; correspondence to D. Green regarding same; | | |
| | | GG | 0.80 hrs. |
| 07/09/08 | Telephone conference with P. Boutin regarding Plaintiff's request for stipulation to arbitrate and discussion of other pending issues; telephone conference with D. Green regarding discussions with Boutin. | | |
| | | GG | 0.50 hrs. |

FOWLER WHITE BOGGS BANKER P.A.

TAMPA • ST. PETERSBURG • FORT MYERS • TALLAHASSEE • ORLANDO • JACKSONVILLE • FORT LAUDERDALE

501 EAST KENNEDY BLVD., SUITE 1700 • TAMPA, FLORIDA 33602 • P.O. BOX 1438 • TAMPA, FL 33601
TELEPHONE (813) 228-7411 • FAX (813) 229-8313 • www.fowlerwhite.com

EXPENSES ARE BILLED AT ACTUAL COST DETERMINED IN ACCORDANCE WITH ABA GUIDELINES.



# FOWLER WHITE BOGGS BANKER

ATTORNEYS AT LAW

ESTABLISHED 1943

Douglas Green
2848 Northeast 32nd Street
Lighthouse Point, Florida  33064

July 16, 2008
Invoice 680053
Tax # 59-1280172
Page 5
BWW/1082409

| Date | Description | Atty | Hours | |
|---|---|---|---|---|
| 07/10/08 | Electronic correspondence with P. Boutin regarding proposal and proffer, arbitration, review of proposed order (drafted by P. Boutin). | GG | 0.40 | hrs. |
| 07/11/08 | Telephone conference with Al Fishman; conference with George Guerra;  receipt and review of Order to Show Cause, Hearing transcripts, and Voluntary Dismissal. | BWW | 1.50 | hrs. |
| 07/11/08 | Receipt and review of Order to Show Cause; contact Court's Judicial Assistant and court reporter in order to obtain hearing transcripts; Receipt and review of July 1st and July 7th transcripts (.5).  Receipt and review of Voluntary Dismissal Without Prejudice; Receipt and review of C. Stern letter to Bank of America regarding D. Green's accounts (.4); Preparation of correspondence to P. Boutin re: continuing freeze on Mr. Green's assets and need to remove freeze (.1); Telephone conference with D. Green (.4). | GG | 1.40 | hrs. |
| 07/14/08 | Telephone conference with D. Green regarding inability to access assets at Bank of America due to continuing freeze; telephone conference with Bank of America representative; telephone conference with P. Boutin regarding possible resolution of pending issues; Exchange correspondence with opposing counsel regarding same; Preparation of correspondence to P. Boutin re: telephone conference. | GG | 2.30 | hrs. |

FOWLER WHITE BOGGS BANKER P.A.

TAMPA • ST. PETERSBURG • FORT MYERS • TALLAHASSEE • ORLANDO • JACKSONVILLE • FORT LAUDERDALE

501 EAST KENNEDY BLVD., SUITE 1700 • TAMPA, FLORIDA  33602 • P.O. BOX 1438 • TAMPA, FL 33601
TELEPHONE (813) 228-7411 • FAX (813) 229-8313 • www.fowlerwhite.com

EXPENSES ARE BILLED AT ACTUAL COST, DETERMINED IN ACCORDANCE WITH ABA GUIDELINES.



# FOWLER WHITE
# BOGGS BANKER

ATTORNEYS AT LAW

ESTABLISHED 1943

Douglas Green
2848 Northeast 32nd Street
Lighthouse Point, Florida  33064

July 16, 2008
Invoice 680053
Tax # 59-1280172
Page 6
BWW/1082409

### Summary of Fees

|  | Hours | Rate/Hr | Dollars |
|---|---|---|---|
| Burton W Wiand | 5.50 | 425.00 | 2,337.50 |
| George Guerra | 26.00 | 355.00 | 9,230.00 |
| Michael Lamont | 15.50 | 285.00 | 4,417.50 |
| Dominique Heller | 16.40 | 185.00 | 3,034.00 |
| Jeffrey C Rizzo | 0.50 | 125.00 | 62.50 |
| TOTAL | 63.90 |  | 19,081.50 |

Fees for Professional Services Rendered ......................................................... $    19,081.50

### Disbursements Through 07/15/08

| 07/02/08 | Photocopies 1 pages | 0.15 |
|---|---|---|
| 07/02/08 | Long Distance Telephone | 2.70 |
| 07/02/08 | Long Distance Telephone | 2.16 |
| 07/02/08 | Long Distance Telephone | 0.54 |
| 07/03/08 | Photocopies 100 pages | 15.00 |
| 07/03/08 | Photocopies 2 pages | 0.30 |
| 07/03/08 | Long Distance Telephone | 1.48 |
| 07/03/08 | Long Distance Telephone | 1.48 |
| 07/03/08 | Long Distance Telephone | 7.56 |
| 07/03/08 | Long Distance Telephone | 11.84 |
| 07/03/08 | Long Distance Telephone | 3.24 |
| 07/03/08 | Long Distance Telephone | 1.48 |
| 07/03/08 | Long Distance Telephone | 1.48 |

FOWLER WHITE BOGGS BANKER P.A.

TAMPA • ST. PETERSBURG • FORT MYERS • TALLAHASSEE • ORLANDO • JACKSONVILLE • FORT LAUDERDALE

501 EAST KENNEDY BLVD., SUITE 1700 • TAMPA, FLORIDA  33602 • P.O. BOX 1438 • TAMPA, FL 33601
TELEPHONE (813) 228-7411 • FAX (813) 229-8313 • www.fowlerwhite.com

EXPENSES ARE BILLED AT ACTUAL COST DETERMINED IN ACCORDANCE WITH ABA GUIDELINES.



# FOWLER WHITE BOGGS BANKER

ATTORNEYS AT LAW

ESTABLISHED 1943

Douglas Green
2848 Northeast 32nd Street
Lighthouse Point, Florida  33064

July 16, 2008
Invoice 680053
Tax # 59-1280172
Page 7
BWW/1082409

| | | |
|---|---|---|
| 07/03/08 | Long Distance Telephone | 2.22 |
| 07/07/08 | Facsimiles 6 pages | 4.80 |
| 07/07/08 | Long Distance Telephone | 1.48 |
| 07/07/08 | Long Distance Telephone | 2.70 |
| 07/07/08 | Long Distance Telephone | 5.94 |
| 07/08/08 | Facsimiles 3 pages | 2.40 |
| 07/08/08 | Long Distance Telephone | 1.48 |
| 07/08/08 | Long Distance Telephone | 2.97 |
| 07/08/08 | VENDOR: Tesler, Sandmann & Fishman; INVOICE#: 1081514/070808; DATE: 7/8/2008  -  Professioanal Services Rendered for 07/02/08 to 07/07/08 | 4,240.00 |
| 07/09/08 | Long Distance Telephone | 5.92 |
| 07/09/08 | Long Distance Telephone | 8.88 |
| 07/10/08 | Photocopies 3 pages | 0.45 |
| 07/11/08 | Photocopies 42 pages | 6.30 |
| 07/11/08 | Long Distance Telephone | 8.91 |
| 07/11/08 | Long Distance Telephone | 1.48 |
| 07/11/08 | Long Distance Telephone | 1.48 |
| 07/11/08 | Long Distance Telephone | 3.70 |
| 07/11/08 | Long Distance Telephone | 1.48 |
| 07/11/08 | Long Distance Telephone | 1.48 |
| 07/14/08 | Facsimiles 3 pages | 2.40 |
| 07/14/08 | Long Distance Telephone | 8.14 |

FOWLER WHITE BOGGS BANKER P.A.

TAMPA • ST. PETERSBURG • FORT MYERS • TALLAHASSEE • ORLANDO • JACKSONVILLE • FORT LAUDERDALE

501 EAST KENNEDY BLVD., SUITE 1700 • TAMPA, FLORIDA  33602 • P.O. BOX 1438 • TAMPA, FL 33601
TELEPHONE (813) 228-7411 • FAX (813) 229-8313 • www.fowlerwhite.com

EXPENSES ARE BILLED AT ACTUAL COST DETERMINED IN ACCORDANCE WITH ABA GUIDELINES.



# FOWLER WHITE BOGGS BANKER

### ATTORNEYS AT LAW

ESTABLISHED 1943

Douglas Green
2848 Northeast 32nd Street
Lighthouse Point, Florida 33064

July 16, 2008
Invoice 680053
Tax # 59-1280172
Page 8
BWW/1082409

07/14/08     Long Distance Telephone                                                   1.35

Total Disbursements ..................................................................................  $     4,365.37

### Totals for This Invoice

Fees for Professional Services.....................................................................     19,081.50
Disbursements ...........................................................................................      4,365.37
NET CURRENT BILLING FOR THIS INVOICE ...........................................     23,446.87
TOTAL DUE FOR THIS INVOICE ...............................................................  $   23,446.87

FOWLER WHITE BOGGS BANKER P.A.

TAMPA • ST. PETERSBURG • FORT MYERS • TALLAHASSEE • ORLANDO • JACKSONVILLE • FORT LAUDERDALE

501 EAST KENNEDY BLVD., SUITE 1700 • TAMPA, FLORIDA 33602 • P.O. BOX 1438 • TAMPA, FL 33601
TELEPHONE (813) 228-7411 • FAX (813) 229-8313 • www.fowlerwhite.com

EXPENSES ARE BILLED AT ACTUAL COST DETERMINED IN ACCORDANCE WITH ABA GUIDELINES.



# FOWLER WHITE
# BOGGS BANKER

### ATTORNEYS AT LAW

E S T A B L I S H E D   1 9 4 3

Douglas Green
2848 Northeast 32nd Street
Lighthouse Point, Florida 33064

July 16, 2008
Invoice 680053
Tax # 59-1280172
BWW/1082409

Re:     1082409
        Pershing LLC v Crocker Securities and Douglas Green


### \* \* \* R E M I T T A N C E   A D V I C E \* \* \*

Payment is due upon receipt.
Please remit this page with your payment.

| | |
|---|---:|
| Fees Due This Invoice | 19,081.50 |
| Disbursements Due This Invoice | 4,365.37 |
| NET CURRENT BILLING FOR THIS MATTER | 23,446.87 |
| TOTAL DUE FOR THIS MATTER ........................................................................................ $ | 23,446.87 |

### FOWLER WHITE BOGGS BANKER P.A.

TAMPA • ST. PETERSBURG • FORT MYERS • TALLAHASSEE • ORLANDO • JACKSONVILLE • FORT LAUDERDALE

501 EAST KENNEDY BLVD., SUITE 1700 • TAMPA, FLORIDA 33602 • P.O. BOX 1438 • TAMPA, FL 33601
TELEPHONE (813) 228-7411 • FAX (813) 229-8313 • www.fowlerwhite.com

EXPENSES ARE BILLED AT ACTUAL COST DETERMINED IN ACCORDANCE WITH ABA GUIDELINES.

LAW OFFICES
## TESLER, SANDMANN & FISHMAN

PETER B. SANDMANN

PAULINE H. TESLER
CERTIFIED FAMILY LAW SPECIALIST
STATE BAR OF CALIFORNIA

ALVIN L. FISHMAN

PLEASE REPLY TO:

→ MILL VALLEY OFFICE

SAN FRANCISCO OFFICE

July 8, 2008

Douglas Green
c/o George L. Guerra, Esq.
Fowler White Boggs Banker P.A.
501 East Kennedy Blvd.
Tampa, Florida 33602

FOR SERVICE RENDERED IN CONNECTION WITH
PERSHING LLC v. CROCKER SECURITIES LLC and DOUGLAS GREEN,
U.S. DISTRICT COURT, N.D. CALIF. No. CV 08-3141 WHA

July 2, 2008 - July 7, 2008

    Telephone calls with Burton Wiand, Esq., and George Guerra, Esq. regarding local counsel representation, office conferences regarding TRO and asset freeze entered by U.S. District Court, assistance and advice in preparation of motions to stay and compel arbitration and of motions for protective order and to dissolve TRO and OSC, review of motions, exhibits and memoranda filed by plaintiff Pershing LLC, review of motions, exhibits and memoranda filed by George Guerra, Esq., telephone conferences with George Guerra, Esq. re same, preparation for oral argument, attendance at federal court for oral argument, confer with opposing counsel.

10.6 hours @ $400.00 = $4,240.00

Please remit.  Thank you.

Peter B. Sandmann